RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0339P (6th Cir.)
File Name: 00a0339p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
      *Plaintiff-Appellant,*

      *v.*

No. 99-5193

JOHN ARTHUR GONZALES,
      *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00065—Edward H. Johnstone,
Senior District Judge.

Argued: June 22, 2000

Decided and Filed: August 15, 2000[*]

Before: SILER and CLAY, Circuit Judges; STAFFORD,
District Judge.[**]

_____

[*] This decision was originally issued as an "unpublished decision" filed on August 15, 2000. On September 6, 2000, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable William Stafford, Senior United States District Judge for the Northern District of Florida, sitting by designation.

1

————————————

**COUNSEL**

**ARGUED:** C. Dean Furman, Jr., ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Fred R. Radolovich, RADOLOVICH LAW OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** C. Dean Furman, Jr., Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Fred R. Radolovich, RADOLOVICH LAW OFFICE, Louisville, Kentucky, for Appellee.

————————————

**OPINION**

————————————

STAFFORD, District Judge. On August 25, 1998, a federal jury in Louisville, Kentucky, convicted John Arthur Gonzales ("Gonzales") on three counts of bankruptcy fraud in violation of 18 U.S.C. § 152 and one count of giving a false statement in a judicial proceeding in violation of 18 U.S.C. § 1001. On December 31, 1998, the district court granted Gonzales's motion for new trial on grounds the jury was exposed to extraneous information. The United States of America appeals that decision, and we reverse.

## I. BACKGROUND

One and a half months after the jury found Gonzales guilty, one of the jurors wrote to the district court, expressing her concerns about the case as follows:

I was the only person in the room that did not think he was totally guilty. There were a couple of people that did not say much; think they were swayed the way of the majority. Most of us were new to the system and I do not believe we all knew the exact way to deliberate this case. My gut feelings were that Mr. Gonzales did make a mistake, but did not intentionally aim to beat anyone out

permit a lone juror to attack a verdict through an open-ended narrative concerning the thoughts, views, statements, feelings, and biases of herself and all other jurors sharing in that verdict, the integrity of the American jury system would suffer irreparably.

In this case, the district court abused its discretion in granting Gonzales a new trial based on nothing save the uncorroborated and incompetent testimony of one juror having second thoughts. Accordingly, we REVERSE and REMAND the case for sentencing.

of any money. Some of the jurors thought that was why he came to Kentucky–so he could file bankruptcy again....They did not believe he took in 3 other children; said he probably had them for a couple of weeks....They also did not believe someone could get in financial trouble due to medical bills. They said there were programs out there to help with such as this....The jurors just could not get over him having a $6,000 riding lawnmower and 5 acres. Some thought he should have sold everything....These people made statements like: I have to work hard for what I have. He should have had the kids out there working to pay off the debt. Should have had those kids out there with push mowers mowing his 5 acres. Even our foreman said that if he ever had to go to court, he hoped he did not get us as his jurors; some of us were heartless, out for blood. I did not begrudge Mr. Gonzales having what he had; the only part that really bothered me with his story was the time he denied knowing his father's SSN. I still feel like he was scared when he denied knowing this, but that was wrong....I kept thinking that I remembered you saying that we had to believe that he did this "intentionally and willing" to defraud. I told them they were going to feel bad when this man had to go to jail for 4 or 5 years. They all seemed to think that since this was a "white collar crime" he would only get a "slap on the hand" and have to do community service. The way the questions were put to us, only having to agree on one portion of each section, I saw I had no way to win.[1]

The district court sent a copy of the juror's letter to Gonzales's counsel. Gonzales thereafter filed a motion to set aside the jury verdict based on the information included in the juror's letter. The United States opposed the motion for new

---

[1]At trial, three bankruptcy petitions signed by Gonzales were admitted into evidence and were sent with the jury during their deliberations. On these petitions, it was stated that the penalty for making a false statement or concealing property was a fine of up to $500,000 or imprisonment for up to 5 years or both.

trial, noting that, without a colorable claim of extraneous prejudicial information or outside influence, Gonzales was not entitled either to a hearing or to relief on his motion.

Believing that the juror's letter demonstrated a colorable claim of "extraneous influence" on the juror, the district court called the concerned juror and counsel to a hearing in chambers on November 30, 1998. The court initially met with the juror outside the presence of counsel to explain "the scope of the conversation," to assure her that the hearing would be under seal, and to invite her to have a cup of coffee. Counsel were then invited into chambers where they were advised that they would not be permitted to ask questions until the juror finished telling about "her experience." In a detailed statement about the jury's deliberations, the juror recounted much of what she had written in her letter, then added one new piece of information regarding statements allegedly made by the jury foreman during deliberations. According to the juror, the jury foreman advised the jury during deliberations that he had served as a juror in the case of another defendant who was also defended by Gonzales's counsel. After telling the jurors that the defendant in the earlier case had changed his plea to guilty during trial, the foreman allegedly said to the jurors in this case: "This is the kind of people this lawyer represents." The juror then said to the district judge and counsel: "I thought you can't judge one case to the next what kind of client they have. But this was the frame of mind that this man was in."

At the conclusion of the hearing, the United States renewed its objection both to Gonzales's motion and to the juror's testimony, arguing that both involved nothing more than the internal thought processes of the jury. As he had done in his response to Gonzales's motion, government counsel referred the court to Rule 606(b) of the Federal Rules of Evidence, which explicitly prohibits jurors from testifying about the deliberative process.

On December 31, 1998, the district judge issued a one-paragraph order in which he stated that Gonzales made "a

what kind of client they have. But this was the frame of mind that this [fore]man was in."

### E.

Having concluded that the district court abused its discretion by granting Gonzales a new trial based on the wholly incompetent testimony of one juror, we must decide whether the case should be remanded for sentencing on the jury's verdict or for further investigation regarding the alleged extra-record information.

It is recognized in this circuit that a hearing is not warranted every time a juror suggests that the jury heard impermissible extraneous information during deliberations. A hearing is required only when there is a colorable claim of extraneous information that "presents a likelihood of affecting the verdict." *United States v. Frost*, 125 F.3d 346, 377 (6th Cir. 1997); *United States v. Rigsby*, 45 F.3d 120, 124 (6th Cir. 1995) (explaining that allegations of extraneous information require a hearing when there is "an obvious potential for improperly influencing the jury").

Assuming, for the sake of argument, that the lone juror in this instance raised a colorable claim of extraneous information, we do not believe that the foreman's alleged statement--that defense counsel always represented guilty clients--presented "an obvious potential for" or a "likelihood of" affecting the jury's verdict. We, therefore, decline to remand the case for further investigation into the one juror's claims of extraneous information.

### III. CONCLUSION

As explained by the Supreme Court in *Tanner*, 483 U.S. at 127, "long- recognized and very substantial concerns support the protection of jury deliberations from intrusive inquiry." These concerns include the need for finality to litigation, the need to protect jurors from harassment after a verdict is rendered, and the need to prevent the possible exploitation of disgruntled ex-jurors. If, as happened here, courts were to

D.

In deciding to grant Gonzales a new trial, the district court relied on two bits of information provided by the juror. The judge explained in his order denying reconsideration: (1) "when discussing whether to convict Gonzales, several jurors mentioned that it would not matter it they convicted him because he was charged with a white collar crime and would only get a slap on the wrist;" and (2) "[t]he jury foreman stated to the jurors that 'this is the type of people' that defense attorney always represents – 'they are always guilty.'" We think the district court abused his discretion when he considered the juror's testimony regarding these two matters in deciding that Gonzales was entitled to a new trial.

The first bit of information--that the jury impermissibly considered punishment--constitutes incompetent evidence absent some allegation that the information about penalties was brought to the jury's attention by or through an outside source. Here, there was no such allegation; and, in fact, the record reveals that evidence as to penalties was admitted at trial and was included among the exhibits taken to the jury room during the jury's deliberations.

The second bit of information--that the foreman allegedly said defense counsel always represented guilty clients--constitutes inadmissible evidence from one juror about another juror's statements during deliberations. Even *if* the information were deemed admissible to establish that the jury heard impermissible extra-record information during deliberations, the district court failed to determine whether that extra-record information was prejudicial to Gonzales, a necessary determination before a new trial may be granted. Neither the district judge nor counsel asked whether the foreman's statement was made before or after the verdict was reached, whether the statement was extensively discussed or seriously considered, or whether the statement actually influenced anyone's verdict. In fact, the testifying juror did not say that her own decision was so influenced. She instead merely said: "I thought you can't judge one case to the next

colorable claim of extraneous influence on the juror" and that it was "in the interest of justice to grant the defendant a new trial." The United States filed a motion to reconsider, which the judge denied by order dated January 12, 1999. In that order denying reconsideration, the district court identified two pieces of "extraneous information" that "pressured" the juror "into voting guilty." Specifically, and without questioning any jurors other than the woman who wrote the letter, the district court explained that (1) the jury foreman had said to the other jurors that defense counsel always represented guilty clients, and (2) several jurors had said during deliberations that it would not matter if Gonzales were convicted "because he was charged with a white collar crime and would only get a slap on the wrist." The court concluded its order by stating that "justice required that a new trial be granted."

## II. DISCUSSION

### A.

We review the district court's decision to grant a new trial for abuse of discretion. *United States v. Bowling*, 900 F.2d 926 (6th Cir.), *cert. denied*, 498 U.S. 837, 111 S. Ct. 109, 112 L.Ed.2d 79 (1990). An "abuse of discretion" will be found if the reviewing court has "a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Mack*, 159 F.3d 208, 215 (6th Cir. 1998).

### B.

The Supreme Court has long adhered to the general rule that a juror is incompetent to impeach his or her verdict. *See, e.g.*, *Mattox v. United States*, 146 U.S. 140, 149, 13 S. Ct. 50, 36 L.Ed. 917 (1892). The necessity for such a rule, which originated in the common law, was explained years ago in *McDonald v. Pless*, 238 U.S. 264, 35 S. Ct. 783, 59 L.Ed. 1300 (1915):

[L]et it once be established that verdicts solemnly made and publicly returned into court can be attacked and set

aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*McDonald v. Pless*, 238 U.S. at 267-268. Federal courts applying the common-law rule held the testimony of jurors incompetent to show (1) a compromise verdict, *Hyde v. United States*, 225 U.S. 347, 32 S. Ct. 793, 56 L.Ed.1114 (1912); (2) a quotient verdict, *McDonald v. Pless*, 238 U.S. at 264; (3) speculation about insurance coverage, *Holden v. Porter*, 405 F.2d 878 (10th Cir. 1969); (4) misinterpretation of the court's instructions, *Farmers Coop. Elevator Ass'n v. Strand*, 382 F.2d 224 (8th Cir.), *cert. denied*, 389 U.S. 1014, 88 S. Ct. 589, 19 L.Ed.2d 659 (1967); (5) mistake in returning a verdict, *United States v. Chereton*, 309 F.2d 197 (6th Cir. 1962), *cert. denied*, 372 U.S. 936, 83 S. Ct. 883, 9 L.Ed.2d 767 (1963); and (6) misinterpretation of the guilty plea of one defendant as implicating others. *United States v. Crosby*, 294 F.2d 928 (2d Cir. 1961), *cert. denied*, 368 U.S. 984, 82 S. Ct. 599, 7 L.Ed.2d 523 (1962).

Historically, a limited exception to the common law rule applied in cases where it was alleged that an "extraneous influence" affected the jury. In *Mattox*, for example, while emphasizing that jurors were prohibited from impeaching or supporting their verdict by testifying as to the motives and influences affecting that verdict, the Court explained that a juror could nonetheless testify as "to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind." *Mattox*, 140 U.S. at 149 (holding admissible the

Apparently believing that a *Remmer* hearing[2] was necessary to investigate the juror's allegations, the district court scheduled a hearing at which the juror was permitted --indeed she was asked by the court--to do just what the common-law and Rule 606(b) prohibits: to give a narrative statement about everything that went on during the deliberative process. After recounting much of what she had written in her letter, all of which Rule 606(b) makes inadmissible in an inquiry as to the validity of the verdict, the juror went on to relate previously undisclosed statements allegedly made by the jury foreman during deliberations--statements about being a juror in a previous trial where Gonzales's counsel represented a different defendant. Although reputed to be the source of the information regarding that earlier trial, the Gonzales foreman was not called to answer questions about the possible existence of an "extraneous influence," as permitted under *Mattox* and the common-law, or about whether "extraneous prejudicial information" was improperly brought to his or any other juror's attention or whether any "outside influence" was improperly brought to bear upon him or any other juror, as permitted under Rule 606(b). Nor were any other jurors called to answer questions about what, if any, extraneous prejudicial information they heard. Instead, a lone juror was permitted to give uncorroborated testimony, not about information that she herself inserted into the jury deliberations, but about what some other juror allegedly said during the deliberative process.

---

[2]In *Remmer v. United States*, 347 U.S. 227, 229, 74 S. Ct. 450, 98 L.Ed. 654 (1954), a case decided under the common-law rule, the Supreme Court held that, when confronted with an allegation of "any private communication, contact, or tampering, directly or indirectly, with a juror during trial," a trial court was required to hold a hearing to "determine the circumstances, the impact [of the contact] upon the juror, and whether or not [the contact] was prejudicial."

source), *cert. denied*, 524 U.S. 962, 118 S. Ct. 2389, 141 L.Ed.2d 754 (1998).

In addition to comments about the Gonzales jurors' mental processes, the letter referred to "matter[s] [or] statement[s] occurring during the jury's deliberations"--items about which jurors may not testify under Rule 606(b). For instance, the juror wrote: (1) "I told them they were going to feel bad when this man had to go to jail for 4 or 5 years;" (2) "These people made statements like: 'I have to work hard for what I have. [Gonzales] should have had the kids out there working to pay off the debt;'" (3) "Even our foreman said that if he ever had to go to court, he hoped he did not get us as his jurors; some of us were heartless, out for blood;" (4) "There were a couple of people that did not say much;" and (5) "I do not believe we all knew the exact way to deliberate this case." Rule 606(b)'s proscription against testimony regarding matters or statements occurring during deliberations applies to disqualify every one of these comments.

The juror's letter also contained the following comments: (1) "The way the questions were put to us, only having to agree on one portion of each section, I saw I had no way to win;" and (2) "[I] think [the people that did not say much] were swayed the way of the majority." Like everything else contained in the juror's letter, these comments were and are inadmissible under Rule 606(b)--these being specifically forbidden under the provision disqualifying jurors from testifying as to "the effect of *anything* upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict." Fed. R. Evid. 606(b) (emphasis added).

testimony of jurors about the introduction of a prejudicial newspaper account into the jury room). Federal courts applied the "extraneous influence" exception to allow juror testimony regarding (1) statements made to the jury by a bailiff, *Parker v. Gladden*, 385 U.S. 363, 87 S. Ct. 468, 17 L.Ed.2d 420 (1966); (2) a juror's contact with a party during trial, *Washington Gas Light Co. v. Connolly*, 214 F.2d 254 (D.C. Cir. 1954); and (3) a juror's contact with someone who suggested that the juror could profit by bringing in a verdict for the defendant. *Remmer v. United States*, 347 U.S. 227, 74 S. Ct. 450, 98 L.Ed. 654 (1954). Absent evidence that fell into the narrow "extraneous influence" exception, federal courts adhered to the common-law rule against admitting juror testimony to impeach a verdict.

In 1972, the rule against impeachment of a verdict by juror testimony was codified in Federal Rule of Evidence 606(b). Rule 606(b) provides as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

Fed. R. Evid. 606(b). The parties here agree, as they must, that Rule 606(b) applies to the situation presented in this case.

Rule 606(b) expressly bars juror testimony on three subjects: (1) "any matter or statement occurring during the course of the jury's deliberations;" (2) "the effect of anything

upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment;" and (3) "the juror's mental processes in connection therewith." Fed. R. Evid. 606(b). The rule creates two exceptions, permitting juror testimony on two questions only: (1) "whether extraneous prejudicial information was improperly brought to the jury's attention," and (2) "whether any outside influence was improperly brought to bear upon any juror." *Id.*

In *Tanner v. United States*, 483 U.S. 107, 125, 107 S. Ct. 2739, 97 L.Ed.2d 90 (1987) (holding that juror intoxication is not an "outside influence" about which jurors may testify to impeach their verdict), the Supreme Court concluded that the legislative history of Rule 606(b) demonstrates with "uncommon clarity" that Congress "specifically understood, considered, and rejected a version of Rule 606(b)" that would have deleted the proscription against testimony "as to any matter or statement occurring during the course of the jury's deliberations." The Senate Report explained:

[The House version's] extension of the ability to impeach a verdict is felt to be unwarranted and ill-advised.

The rule passed by the House embodies a suggestion by the Advisory Committee...that is considerably broader than the final version adopted by the Supreme Court, which embodied long-accepted Federal law. Although forbidding the impeachment of verdicts by inquiry into the jurors' mental processes, it deletes from the Supreme Court version the proscription against testimony "as to any matter or statement occurring during the course of the jury's deliberations." This deletion would have the effect of opening verdicts up to challenge on the basis of what happened during the jury's internal deliberations, for example, where a juror alleged that the jury refused to follow the trial judge's instructions or that some of the jurors did not take part in deliberations.

....

Public policy requires a finality to litigation. And common fairness requires that absolute privacy be preserved for jurors to engage in the full and free debate necessary to the attainment of just verdicts. Jurors will not be able to function effectively if their deliberations are to be scrutinized in post-trial litigation. In the interest of protecting the jury system and the citizens who make it work, rule 606 should not permit any inquiry into the internal deliberation of the jurors.

S. Rep. No. 1277 at 13 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7051. The Conference Committee adopted, and Congress enacted, the Senate's more narrow version--the current version--of Rule 606(b).

C.

In this case, Gonzales challenged the jury's verdict based solely on a concerned juror's letter. Our close examination of that letter reveals that it contained *no* evidence that was or is admissible in an inquiry into the validity of the verdict against Gonzales. The juror not only wrote about her own thought processes; she also wrote about the thought processes of other jurors. For example, she wrote that: (1) "I was the only person in the room that did not think [Gonzales] was totally guilty;" (2) "My gut feelings were that Mr. Gonzales did make a mistake, but did not intentionally aim to beat anyone out of money;" and (3) "They all seemed to think that since this was a 'white collar crime' he would only get a 'slap on the hand' and have to do community service." Because Rule 606(b) explicitly disqualifies juror testimony regarding jurors' mental processes in connection with deliberations, these juror statements were not, and are not, admissible to support the grant of a new trial. *See United States v. Brito*, 136 F.3d 397 (5th Cir.) (holding that, where a juror stated in an affidavit that her verdict was "coerced" by other jurors and that the jurors impermissibly discussed punishment and appellate rights, the testimony was inadmissible on a motion for new trial absent anything to suggest that the coercion and information was brought to the jury's attention by an outside