NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0960n.06
Filed: December 14, 2005

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROSE MARIE GALE and DANUT GALE, | ) | |
| *Plaintiffs-Appellants,* | ) | |
| | ) | |
| v. | ) | No. 03-1993 |
| | ) | |
| CITY OF TECUMSEH and FRANK CROSBY, | ) | |
| *Defendants-Appellees.* | ) | |
| | ) | |
| | ) | |

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:02-CV-71440 – Robert H. Cleland, District Judge.

Argued: March 14, 2005

Decided and Filed: _____

Before: NELSON, Circuit Judge; BATCHELDER Circuit Judge;
and O'MALLEY, District Judge.[*]

_____/

*O'MALLEY, J.* This appeal arises from a judgment entered on a defense verdict following

a jury trial and from an order denying the plaintiffs' motion for a new trial. The plaintiffs-appellants

Rose Marie Gale ("Gale") and Danut Gale ("Mr. Gale") (collectively, "Appellants" or "Gales")

brought suit against the defendants-appellees, the City of Tecumseh ("City") and City Manager

_____

  [*]     The Honorable Kathleen O'Malley, United States District Judge for the Northern District
of Ohio, sitting by designation.

Frank Crosby ("Crosby") (collectively, "Appellees"), ultimately receiving an unfavorable jury verdict on two claims under the Michigan Whistleblower's Protection Act, MCL Sec. 15.361 *et seq.*, the only two claims that survived dismissal and summary judgment during the course of the proceedings. Judgment was entered on the verdict, and Appellants' subsequent motion for a new trial was denied. Appellants now appeal both the judgment on the verdict and the order denying their motion for a new trial, arguing that (1) the district court abused its discretion in excluding certain evidence at trial, (2) the district court exhibited bias against Appellants, thereby denying Appellants a fair trial, and (3) the district court abused its discretion in denying Appellants' motion for a new trial.

For the reasons set forth more fully below, we find that there was no abuse of discretion in the district court's evidentiary rulings at trial, there is insufficient evidence to support a finding of judicial bias, and the district court did not abuse its discretion in denying Appellants' motion for a new trial. We, therefore, **AFFIRM** the district court's judgment on the verdict, and we **AFFIRM** the post-judgment order denying Appellants' motion for a new trial.

I.      **BACKGROUND**

A.      **Factual Background**

In October 1999, Gale began working part-time for the City of Tecumseh. By June 2001, Gale had become a full-time employee as an assistant to the director in the Development Services Department. She held that position until she was terminated in September 2002. This case arises from Gale's interactions with Crosby, who was the Tecumseh City Manager and Gale's supervisor. Specifically, the case focuses on a series of complaints and grievances filed by Gale against Crosby and on Crosby's treatment of Gale after those complaints and grievances were filed. Gale contends

2

that, as a result of reporting allegedly unlawful and inappropriate activity on the part of Crosby, she was given mandated lunch hours, verbally assaulted, stalked, disciplined, suspended without pay, and eventually terminated.

The first relevant problem between Gale and Crosby concerned minutes Gale was responsible for taking at city meetings. Gale alleged that, on several occasions, Crosby asked her to alter the minutes in a way that she felt was inappropriate and illegal. She therefore reported Crosby's requests to members of city council and other city officials. Reporting those requests, according to Gale, led to the first in a series of allegedly retaliatory acts by Crosby. On June 29, 2001, Crosby mandated that Gale take her lunch hour either before 10:45 a.m. or after 1:45 p.m. Crosby contends that he assigned those lunch hours to ensure that someone in the department was always present to process permits and deal with enforcement issues. Gale, however, felt that she had been singled out for this duty because she notified city officials of Crosby's requests to alter city meeting minutes. On July 2, 2001, Gale filed a grievance with Crosby and her immediate supervisor regarding her mandated lunch hours.

Thereafter, on July 10, 2001, Crosby allegedly assaulted and harassed Gale after a city council meeting. According to Gale, Crosby became enraged when she told him that she expected an official response to her grievance. Gale claims that Crosby screamed at her with fists clenched and raised, thereby putting her in fear of bodily harm. Crosby, on the other hand, testified at trial that he never yelled at Gale or raised his fists. Gale filed a second grievance in connection with this incident.

On November 1, 2001, the city council held a special meeting concerning Crosby's behavior and "general handling of personnel issues." Although Gale spoke at the meeting about the July 10,

3

2001 incident, Crosby's conflict with Gale was not a focus of the discussion. Three days after the meeting, the city council voted to issue a formal written reprimand to Crosby, stating that his behavior was not meeting the council's standards. The letter of reprimand did not reference Gale or any of the alleged incidents with Crosby, but did include directives such as, "[y]ou shall treat all employees . . . with respect," "[y]ou shall not raise your voice in any way to . . . city employees," "[y]ou shall not harass employees," and "you shall make no effort in the future to determine the source of information given to council." The letter of reprimand also contained directives not to use sexually suggestive or inappropriate language, not to engage in public or private ridicule of council persons, not to use city resources to express personal religious opinions, and not to call city employees before or after certain hours. The letter did not mention retaliation.

Starting on November 2, 2001, one day after the city council meeting, Gale contends that Crosby began stalking her by driving by the Gales' house in a city car, parking his car, then screeching his tires while driving away. According to Gale, this occurred repeatedly during a ten day period until November 12, 2001. Crosby testified at trial, however, that he was out of town during at least portions of this time period. For example, he was able to establish that, on November 2 and 3, he was forty-five minutes away at his daughter's swim meet. Gale filed another grievance for the alleged stalking.

Appellants also allege that, after the stalking incident, Crosby caused an investigation of Gale, which resulted in a suspension without pay; orchestrated false accusations against the Gales, which led to another suspension of Gale and public embarrassment of Mr. Gale; interfered with Gale's performance of her duties; refused to promote Gale; and demoted Gale while giving her additional responsibilities. Gale filed three more grievances.

4

In April 2002, Gale went on stress-related medical leave under the Federal Family and Medical Leave Act. When her allotted medical leave time expired, Gale did not return to work, which she says was, in part, based on professional medical advice. On September 26, 2002, at the expiration of Gale's medical leave, the City terminated her employment.

## B. Procedural Background

On April 12, 2002, the Gales sued the City and Crosby under 42 U.S.C. Secs. 1983 and 1985(3), the Michigan Whistleblower's Protection Act ("WPA"), and common law. Eventually, the Gales voluntarily dismissed the Section 1985(3) claim and a common law claim of defamation, and the district court entered summary judgment for the City and Crosby on the Section 1983 claim and a common law claim of intentional infliction of emotional harm. The case proceeded to trial on the Gales' claims under the Michigan WPA.

The main issue at trial was whether the City's termination of Gale was causally connected to her grievance concerning the July 10, 2001 incident and/or the grievance concerning Crosby's alleged stalking in November 2001. The jury returned a verdict in favor of the City and Crosby.

Following the verdict, the Gales moved for a new trial based solely on an anonymous letter purporting to be from a former juror. The letter, which was sent to the City and faxed to the Gales' counsel three days after the verdict was returned, stated that the defendants won their case "due to legal language and a slick lawyer." The Gales argued that the reference to "legal language" implied that the jury was confused by the district court's jury instructions. Their motion for a new trial was denied, and the Gales filed a timely appeal from the judgment on the jury verdict and the order denying their motion for a new trial.

## II. ANALYSIS

5

Appellants argue three issues on appeal: (1) the district court abused its discretion in excluding certain evidence at trial; (2) the district court exhibited bias against Appellants such that Appellants were denied a fair trial; and (3) the district court abused its discretion in denying Appellants' motion for a new trial. Each argument will be addressed in turn.

## A.      Exclusion of Evidence

Appellants argue that there are three instances in which the district court improperly excluded evidence: (1) the exclusion of the letter of reprimand issued by the city council to Crosby; (2) the "curtailment" of video-recorded deposition testimony of former city councilman Anthony Gorton; and (3) the exclusion of a memorandum (the "Shawnee Street Memorandum") allegedly authored by Crosby, as well as the limitation of cross-examination regarding that memorandum.

### 1.      *Standard of Review*

A district court's evidentiary rulings are reviewed for abuse of discretion. *See Greenwell v. Boatright*, 184 F.3d 492, 495 (6th Cir. 1999). "A finding of abuse of discretion will be made only where the reviewing court is firmly convinced that a mistake has been made." *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir. 1991). In addition, "[t]he discretion of the trial court is not to be disturbed on appeal unless . . . the ruling excluding the evidence is not only erroneous but results in substantial injustice to the aggrieved party." *Sutkiewitz v. Monroe County Sheriff*, 110 F.3d 352, 257 (6th Cir. 1997).

### 2.      *Letter of reprimand*

As mentioned above, the city council issued a letter of reprimand to Crosby following the special meeting convened to address Crosby's personal behavior. While the district court did not bar reference to the letter, and allowed discussion of the reprimand before the jury, the district court

excluded the actual letter of reprimand pursuant to Rule 403 of the Federal Rules of Evidence ("Rule 403"), finding that the probative value of the text of the letter was substantially outweighed by the danger of unfair prejudice. Thus, while the district court stated that, "of course the testimony concerning the existence of the letter of reprimand, what was done with it, the purported reactions to it and so forth, all of that testimony is appropriate," it found that the letter itself was only "minimally relevant to the issues that are being tried in this case, the issues that relate specifically to Gale and Crosby's interaction with her." (Joint Appendix ("JA") 1538.) Finally, the trial court found that any minimal relevance the text of the letter might have was substantially outweighed by its prejudicial value.

Appellants argue that the letter of reprimand is highly probative because it lends credence to Gale's claim of Crosby's inappropriate behavior, and that it is relevant in an indirect manner to permit the jury to evaluate the credibility of other evidence offered by Crosby. Appellants essentially argue that the letter tends to contradict Crosby's testimony that he did not assault or harass Gale after the city council meeting on July 10, 2001, and that he did not stalk Gale. Because the letter indirectly supports the assertion that those incidents occurred, according to Appellants, the district court abused its discretion in excluding the letter. We disagree.

Exclusion of the reprimand letter was neither erroneous nor resulted in substantial injustice. The letter made no reference to Gale or any of the specific events Gale alleged in her complaint. It is true that the directives in the letter to "treat employees with respect" and "not harass employees" could be perceived as relating to the Gales' claims, but the critical issue at trial, as required by the Michigan WPA, was not whether the alleged incidents occurred, but whether Gale's reporting of them caused Crosby to retaliate against her. *See Chandler v. Dowell Schaumberg*, 572

7

N.W.2d 210, 212 (Mich. 1998) (outlining the prima facie case under the Michigan WPA, the third of which requires a plaintiff to show that "a causal connection exists between the protected activity and the discharge"). The probative value of the letter, therefore, is diminished by the fact that the crux of the case is not the occurrence or nonoccurrence of these incidents, but whether Crosby retaliated against Gale for reporting that they occurred. While the fact of the reprimand is clearly relevant to that issue, the text of the letter itself sheds no additional light on it.

On the other hand, the letter also contained suggestions that Crosby engaged in serious misconduct wholly unrelated to the Gales' claims, such as using sexually inappropriate language and abusing city resources. In balancing the minimal relevance of the text of the reprimand letter against the potential for substantial prejudice, we are not "firmly convinced" that excluding the letter was a mistake. *See Williams*, 952 F.2d at 1518.

As noted, moreover, the district court did not bar all reference to the letter; the jury was permitted to hear, and did in fact hear, substantial evidence regarding it. Significantly, Appellants presented evidence that Crosby blamed Gale for being given the reprimand letter, and Gale specifically referenced certain directives in the letter on direct examination. In light of the jury's exposure to the fact, and even certain aspects of the substance, of the letter, it cannot be said that the Appellants suffered substantial injustice by the district court's exclusion of the letter itself.

### 3.    *Video-testimony of Anthony Gorton*

Appellants also argue that the district court improperly curtailed the video-recorded deposition testimony of Anthony Gorton ("Gorton"), a former city council member. Gorton's deposition testimony contained negative references to Crosby's general behavior as well as testimony regarding an incident in which Crosby was accused of lying to city council. The district

8

court permitted the video to be played, but, following the video, gave the jury an instruction pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). Appellants also contend that the district court stopped the video before it was finished. Appellants argue that both the instruction and the stopping of the video were improper.

The basis for the district court's Rule 404(b) instruction was that Gorton's testimony included references to Gorton's belief that Crosby "yells," "screams", and "upsets" people, and has caused employees to quit. There was no specific reference, however, to Crosby's interactions with Gale. After the video, the court instructed the jury that,

> to the extent that this witness testified that he believed that Mr. Frank Crosby had some particular traits of character, anger and whatnot, it is not proper for you to consider any such evidence in attempting to decide whether Crosby on a particular occasion relating to Gale may have acted in the same way

(JA 1111-12.)

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Gorton's opinion that Crosby had, on prior occasions, resorted to fits of anger seems to fall within this rule.[1] The decision to admit the testimony subject to the Rule 404(b) instruction is both fair and proper, particularly where the testimony was given by video deposition, making it difficult for the court to regulate individual questions and answers. We find, therefore, that the district court did not abuse its discretion in giving the Rule 404(b) instruction.

---

[1] The Gales did not contend at trial that Gorton's observations of Crosby were sufficient to establish the existence of a "habit" under Rule 406 of the Federal Rules of Evidence. We do not, accordingly, express any opinion regarding the interplay between generally inadmissible character evidence and the quantum of evidence sufficient to establish the existence of a habit or routine.

9

As to the claim that the district court somehow curtailed the playing of the video, we find no support in the record at trial for Appellants' claim that the video was not played in full. According to the transcript, the district court called a brief recess to discuss the Rule 404(b) issue, after which the court called the jury back and remarked, "Please be seated and let's continue with the deposition." (JA 1109.) The transcript then contains the parenthetical note, "(Video dep continuing of ANTHONY GORTON)." (JA 1109.) There is no indication that the video was not played in its entirety.

Appellants seem to argue that the court stopped the video based on Rule 403 of the Federal Rules of Evidence. (Appellants' Brief at 21 ("The lower court failed to give careful and extensive consideration to the relevant facts and law in reaching its conclusion that the testimony of Mr. Gorton was more prejudicial than probative.")) As indicated above, however, there is nothing in the record to indicate that the video was stopped, much less that it was stopped based on Rule 403. Indeed, the district court's only reference to Rule 403 in this portion of the transcript was as an aside during its recess to discuss the Rule 404(b) instruction, saying that the testimony "*may* be violative of Rule 403. I think it very likely is violative of Rule 404(b)." (JA 1107) (emphasis added).

Appellants, nonetheless, contend that the video was stopped before Gorton testified about specific instances in which Crosby allegedly lied to the city council. Appellants argue that "[t]his testimony as to Mr. Crosby's propensity for lying is and was relevant as to the critical issue of reliability." Assuming that the video was in fact stopped, it is clear that Rule 608(b) of the Federal Rules of Evidence ("Rule 608(b)") would bar any testimony by Gorton as to specific instances where Crosby lied to city council. Rule 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness . . . may

10

not be proved by extrinsic evidence." Allowing Appellants to play Gorton's deposition testimony as to specific instances in which Crosby lied would clearly constitute extrinsic evidence of specific instances of conduct used to attack Crosby's character for truthfulness. Even if the district court did curtail the video, there was no abuse of discretion in doing so because the testimony would have been barred by Rule 608(b).

### 4. *"The Shawnee Street Memorandum"*

The final evidentiary ruling Appellants challenge is the exclusion of a memorandum, known as the "Shawnee Street Memorandum," and the refusal by the district court to permit cross-examination of Crosby and Harvey Schmidt ("Schmidt"), mayor of the City, regarding that memorandum. The "Shawnee Street Memorandum" was a memorandum written to a school superintendent describing how to influence city council in order to receive favorable decisions. Crosby was accused by city council of authoring the memorandum, which he denied. Appellants claim that Crosby lied to city council when he denied writing the memorandum, and sought to expose that alleged lie to attack Crosby's credibility. The memorandum was unrelated to the Gales or any events involved in their lawsuit. Appellants sought to introduce the memorandum during cross-examination of both Schmidt and Crosby, and the district court excluded the memorandum in both instances; in addition, the district court barred cross-examination of either Schmidt or Crosby as to the memorandum.

First, as to Schmidt, it is clear that the district court did not abuse its discretion either in excluding the memorandum itself or in barring cross-examination concerning the memorandum. This is the precise subject matter of Gorton's video-recorded deposition testimony, and, for the same reasons, it is likewise prohibited by Rule 608(b). The sole purpose of cross-examination regarding

the memorandum and the introduction of the memorandum, as admitted by Appellants, was to show that Crosby lied to city council "for its probative value regarding Crosby's propensity for truthfulness or untruthfulness as a witness." (Appellants' Brief at 23.) Specific instances of Crosby's conduct used to attack his character for truthfulness, such as lying to city council, may not be proved by extrinsic evidence. Both the testimony of Schmidt and the memorandum constitute extrinsic evidence, and are barred for those reasons.

As to Crosby, however, it was squarely within the court's discretion to determine whether to allow cross-examination as to the memorandum. After Rule 608(b)'s general prohibition on extrinsic evidence for credibility attacks, the Rule continues that specific instances of conduct "may, however, *in the discretion of the court*, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the witness' character for truthfulness or untruthfulness." (emphasis added). The district court, therefore, had discretion to permit or prohibit cross-examination of Crosby regarding the memorandum. The district court prohibited questions on the matter, relying on Rule 403's balancing test[2] and finding that "there's a significant enough risk of confusing the issues on the jury that it should be excluded." (JA 1373.) We do not find that the district court's decision was an abuse of discretion.

Although the specific instances of conduct, e.g., allegedly lying to city council, are probative of Crosby's credibility, they did not relate to any substantive areas of the case. On the other side of the scale, there is a substantial risk that the jury may have been distracted by the peripheral question of whether Crosby lied to city council about matters unrelated to the lawsuit. Overall,

---

[2] "Rule 608(b) is still subject to the balancing under Rule 403." *United States v. Atwell*, 766 F.2d 416, 420 (10th Cir. 1985).

while a close call, we are not "firmly convinced" that the district court erred in refusing to permit questions about the Shawnee Street Memorandum. This is especially true given that Rule 403 decisions "are placed within the sound discretion of the trial court." *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 218 (6th Cir. 1982). We are not compelled to upset the district court's discretion in this instance.

### B.     Judicial Bias

Appellants also allege that the district court exhibited bias against Appellants, thereby influencing the jury and depriving Appellants of a fair trial. Specifically, Appellants point to numerous sections of the trial transcript where, according to Appellants, the district court "challenged plaintiff's counsel . . . , stopped the cross-examination of a witness, did not allow counsel to voice his objections, questioned witnesses himself, did not hesitate to use language that was hostile, and evidenced his desire to inform plaintiffs that the elements of her claim were not being proved." (Appellants' Brief at 25.) The result of those exchanges, according to Appellants, is that the jury was influenced by the district court's alleged prejudice, denying Appellants a fair trial. Appellants, however, made no objections to the district court's alleged interference or bias during the trial.

### 1.     *Standard of Review and Applicable Law*

In the Sixth Circuit, when a party alleges judicial bias but neither preserves objections to the district court's alleged interference at trial, nor argues that to object would have exacerbated the situation, the district court will not be reversed on the ground of judicial bias unless it committed plain error. *United States v. Owens*, 159 F.3d 221, 227 (6th Cir. 1998). "The plain error doctrine mandates reversal only in exceptional circumstances, only where the error is so plain the trial judge

13

. . . was derelict in countenancing it." *United States v. Tipton*, 11 F.3d 602, 611 (6th Cir. 1993).

Further, "judicial remarks during the course of a trial that are critical or disapproving of, or even

hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge."

*Liteky v. United States*, 510 U.S. 540, 555-56 (1994). Likewise, "expressions of impatience,

dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Id.* at 555.

### 2.    *Discussion*

In this case, the district court at times expressed impatience or annoyance with the Gales'

counsel,[3] and the district court, *sua sponte,* questioned the admissibility of the video-recorded

deposition of Gorton. Those actions, however, do not rise to the level of plain error or demonstrate

a level of bias which is so extreme as to deny the Gales a fair trial. Many of the instances of alleged

bias about which Appellants complain are unfavorable judicial rulings, which almost never

constitute judicial bias. *See Liteky*, 510 U.S. at 555.

The transcript simply does not reveal the level of hostility Appellants allege, nor does it

---

[3]    One exchange between the district court and plaintiffs' counsel (Mr. Berggren) is illustrative of the transcript sections Appellants cite:

> COURT: Well, you have your answer. What's the next question.
> MR. BERGGREN (plaintiffs' counsel): I have nothing else.
> COURT: Very well. Mr. Paxton (defendants' counsel)?
> MR. BERGGREN: Wait, excuse me. I do. I'm sorry.
> COURT: We need to be a little more rapid, if you please, Mr. Berggren. Do you have another question?
> MR. BERRGREN: Yeah.
> COURT: Please
> MR. BERRGREN: Yeah.
> COURT: Go ahead.
> MR BERRGREN: That's all.
> COURT: All right. That's all. Mr. Paxton, do you have any further examination?

(JA 1255-56.)

contain evidence of the type of bias that this Court has found sufficient to constitute plain error in prior cases. *See, e.g., United States v. Hickman*, 592 F.2d 931 (6th Cir. 1979). In *Hickman*, this Court found plain error where the district court interjected itself more than 250 times in a one-day trial, took it upon itself to rehabilitate witness testimony after defense counsel had conducted cross-examination, and did not wait for objections, but "would *sua sponte* interrupt a witness or counsel, with the words 'objection sustained' and then proceed to state why the witness' testimony was in some way objectionable." *Id.* at 932-35. Further, the district court in *Hickman* cut off defense counsel in closing argument and, in the jury's presence, admonished that "I won't let you tell them rotten law." *Id.* at 936.

In the present case, Appellants argue that the district court improperly questioned the admissibility of Gorton's video-recorded testimony, exhibited hostility toward the Gales' counsel, and used biased or value-laden language when it warned the jury that considering evidence of a character trait is "not legitimate" and "not proper." There is a significant difference, however, between calling something "not proper" and calling something "rotten law," and between questioning the admissibility of a single piece of evidence and interjecting oneself into the trial over 250 times by interrupting counsel and witnesses with *sua sponte* objections. The district court's actions in this case do not even come close to constituting plain error; rather, they are more properly characterized as "ordinary efforts at courtroom administration." *Liteky*, 510 U.S. at 556.

Accordingly, we find that there is insufficient evidence to support a finding of judicial bias.[4]

### C.    Motion for New Trial

Appellants' final argument is that the district court abused its discretion in denying their motion for a new trial. The basis for Appellants' motion was an anonymous letter, purporting to be from a former juror, which stated that "Frank Crosby won his case in court due to legal language and a slick lawyer." Appellants argue that the reference to "legal language" indicates that the jurors were confused by the district court's jury instructions. Specifically, Appellants contend that the district court erroneously instructed the jury as to stalking and assault, which are unnecessary to the elements required by the Michigan WPA.

The district court denied the motion, noting first that Appellants' counsel never objected to the jury instructions when given the opportunity to do so. The district court then reasoned that, even if Appellants' interpretation of the letter was correct, it did not raise any colorable claims of "extraneous prejudicial information" or "outside influence," as required by Rule 606(b) of the Federal Rules of Evidence ("Rule 606(b)") and Sixth Circuit case law. *See, e.g., United States v. Gonzales*, 227 F.3d 520, 523-526 (6th Cir. 2000) (finding that district court abused its discretion in granting a new trial because a concerned juror's letter did not present any evidence of extraneous

---

[4]    In addition, the district court properly instructed the jury that,

> nothing I've said during the trial of this case should be taken by you as any indication that I have an opinion about the facts or any of the witnesses in the case or any of the attorneys in the case or anything of that nature . . . If because of something I've said or done during the trial you think I may have some opinion about the way the case should be decided, please ignore that.

(JA 763.)

16

prejudicial information or outside influence).

### 1. *Standard of Review*

A district court's denial of a motion for a new trial is reviewed for abuse of discretion. *Greenwall v. Boatright*, 184 F.3d 492, 499 (6th Cir. 1999). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* (quoting *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996)).

### 2. *Discussion*

As noted by the district court in this case, "[t]he Supreme Court has long adhered to the general rule that a juror is incompetent to impeach his or her verdict." *See, e.g., Mattox v. United States*, 146 U.S. 140, 149 (1892). If that were not so, the Supreme Court has explained, "[j]urors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *McDonald v. Pless*, 238 U.S. 264, 267-68 (1915). Following this general rule, courts have specifically held that testimony of jurors is incompetent to impeach a verdict based on misinterpretation of the court's instructions. *See Farmer's Coop. Elevator Ass'n v. Strand*, 382 F.2d 224, 230-32 (8th Cir. 1967) (denying motion for a new trial where juror submitted an affidavit that the jury "gave inadequate consideration to and misinterpreted the court's instructions"). Rule 606(b), which is a codification of the general rule that juror testimony is incompetent to impeach a verdict, provides only two exceptions where juror testimony on the validity of a verdict is permissible: "on the question (1) whether extraneous prejudicial information was improperly brought to the jury's attention or (2) whether any outside influence was improperly brought to bear upon any juror." (numerals added).

17

Even assuming the anonymous letter is indeed from a former juror, and even accepting Appellants' interpretation that "legal language" refers to juror confusion about the jury instructions, there is no basis under Rule 606(b) for granting a new trial. Juror confusion as to the meaning of jury instructions clearly does not fall within the exceptions for "extraneous prejudicial information" or "outside influence." Rule 606(b) contemplates only external interactions with the jury that may have tainted the deliberation process, and it "explicitly disqualifies juror testimony regarding jurors' mental processes in connection with deliberations." *United States v. Gonzales*, 227 F.3d 520, 525 (6th Cir. 2000). In this case, even if jurors were confused by the district court's instructions, that confusion does not constitute an outside influence; rather, it involves the mental processes of the jurors. It is, therefore, squarely outside the purview of Rule 606(b). The district court, therefore, did not abuse its discretion in denying Appellants motion for a new trial.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment on the verdict and the district court's denial of Appellants' motion for a new trial are hereby **AFFIRMED**.